United States District Court
Southern District of Texas
**ENTERED**
March 16, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| THOMAS H.,[1] | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:21-cv-04253 |
| | § | |
| KILOLO KIJAKAZI, | § | |
| Acting Commissioner of Social | § | |
| Security, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM AND ORDER

Plaintiff Thomas H. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. Pl.'s Compl., ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").[2] The Parties filed cross-motions for summary judgment. Pl.'s MSJ,

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On June 6, 2022, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Consent & Transfer Order, ECF No. 10.

ECF No. 12; Pl.'s MSJ Br., ECF No. 12-1; Def.'s MSJ, ECF No. 13. Plaintiff challenges the Administrative Law Judge's ("ALJ") determination, arguing that the ALJ's finding that Plaintiff is not disabled is not supported by substantial evidence and is the result of legal errors. ECF No. 12-1. Defendant counters, asserting that the ALJ carefully reviewed the record, delineated his findings with attention to the full record, and pointed to substantial evidentiary support for his findings. ECF No. 13. Based on the briefing, the law, and the record, the Court determines that the ALJ's opinion is largely supported by substantial evidence and most of Plaintiff's arguments are without merit. However, the ALJ failed to consider whether Plaintiff's service animals are medically necessary, and if so, what impact a service animal would have on Plaintiff's ability to perform jobs in the market. Therefore, Plaintiff's motion for summary judgment should be granted in part and denied in part and Defendant's motion for summary judgment should be granted in part and denied in part.

## I.   BACKGROUND

Plaintiff is 46 years old, R. 295,[3] and has a high school education. R. 26. Plaintiff worked as mechanical designer and aviation mechanic. R. 35. Plaintiff alleges a disability onset date of January 1, 2018. R. 24. Plaintiff claims he suffers physical and mental impairments. *Id.*

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 14.

On February 4, 2020, Plaintiff filed an application for disability benefits under Title II of the Act. R. 231–37. Plaintiff based[4] his application on limitations stemming from major depressive disorder, general anxiety disorder, L4-5 herniated discs with left paracentral extusion, left femoral nerve rad moderate incomplete paralysis, right sciatic nerve rad mild incomplete paralysis, and degenerative disc disease. R. 266. The Commissioner denied his claim initially, R. 126-29, and on reconsideration, R. 134-36.

A hearing was held before an ALJ. An attorney represented Plaintiff at the hearing. R. 42. Plaintiff and a vocational expert ("VE") testified at the hearing. R. 43. The ALJ issued a decision denying Plaintiff's request for benefits.[5] R. 19–41. The

---

[4] The relevant time period is January 1, 2018—Plaintiff's alleged onset date—through January 18, 2021—the date of the ALJ's decision. R. 24, 37. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step five. R. 20. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since the alleged onset date. R. 12 (citing 20 C.F.R. §§ 404.1571 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: disorders of the back, intermittent explosive disorder, personality disorder, status-post carpal tunnel release, obesity, affective mood disorder, and generalized anxiety disorder. R. 24 (citing 20 C.F.R. § 404.1520(c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 25 (referencing 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 CFR § 404.1567(b). R. 28. However, the ALJ added limitations, including that standing and/or walking is limited to four hours out of an eight-hour workday, no more than 30 minutes at a time. After 30 minutes of standing and/or walking, the claimant should be allowed to sit at the workstation for three to four minutes while continuing to work before he could return to standing or walking. He should never be required to climb ropes, ladders or scaffolds or crawl. He can only occasionally balance, stoop,

Appeals Council denied Plaintiff's request for review, thus upholding the ALJ's decision to deny disability benefits. R. 1-3. Plaintiff filed suit, appealing the determination. ECF No. 1.

## II. STANDARD OF REVIEW OF THE COMMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.*

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *see also Boyd*

---

kneel and crouch. Although he is status-post bilateral carpal tunnel release, due to mild residual pain in his hands, he can frequently but not constantly fine finger and gross handle. Further, the claimant should never be required to work in proximity to hazards. To minimize stress, the claimant should never be required to work at a forced pace. Due to his social limitations, the claimant should be limited to no more than only occasional interactions with the public, coworkers, and supervisors, and should have no more than one or two supervisors. Due to the claimant's limitations in adapting to change and handling stress, he should never be subjected to more than only occasional changes in the work setting and should never be required to make plans or set goals independently of others. R. 28. At step four, the ALJ determined that Plaintiff was not able to perform past relevant work as a mechanical designer or aviation mechanic. R. 35 (citing 20 C.F.R. § 404.1565). However, the ALJ determined that the Plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy. R. 36-37. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 37.

*v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza*, 219 F.3d 393. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

Rather, a reviewing court must scrutinize the record as a whole, considering whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   THE SHIFTING BURDEN OF PROOF IN A DISABIILITY CASE.

An individual claiming entitlement to benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (2000). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3) (2000). The impairment must be so severe that the claimant is "incapable of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)).

The Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to

establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to the Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE ALJ FAILED TO CONSIDER WHETHER A SERVICE AMINAL WAS MEDICALLY NECESSARY.

In challenging the ALJ's finding that he is not disabled, Plaintiff raises four issues: (1) the ALJ erred in failing to properly consider Dr. Nemirovskiy's March 26, 2021 letters; (2) the ALJ improperly failed to incorporate Plaintiff's need for a service animal in his RFC; (3) the ALJ failed to properly apply the consistency factor in evaluating Dr. Fox's opinion; and (4) and the ALJ improperly substituted his lay opinion for the medical opinion of experts. Defendant responds that the ALJ did not commit error and his determination was based on substantial evidence. The Court addresses each of these arguments in turn.

### A. The ALJ's RFC analysis.

Before reaching step four of the evaluation process, the ALJ must determine a claimant's RFC. 20 C.F.R. § 404.1520(a)(4). The RFC is a "determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457,

462 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)); *accord Winston v. Berryhill*, 755 F. App'x 395, 399 (5th Cir. 2018). This evidence includes, but is not limited to, "medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations." *Roe v. Astrue*, No. 11-CV-226, 2013 WL 490676, at *4 (N.D. Tex. Feb. 8, 2013); *see Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988) ("A person's [RFC] is determined by combining a medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work.").

The RFC determination is the sole responsibility of the ALJ. *Taylor v. Astrue*, 706 F.3d 600, 602–603 (5th Cir. 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). When making the RFC determination, the ALJ must consider all medical opinions contained in the record. *Winston*, 755 F. App'x 399; 42 U.S.C. § 405(b)(1). The ALJ must "incorporate limitations into the RFC assessment that were most supported by the record." *Conner v. Saul*, No. 4:18-CV-657, 2020 WL4734995, at *8 (S.D. Tex. Aug 15, 2020) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). The revised Social Security guidelines[6] require consideration of several factors, the most important of which are consistency and supportability.

---

[6] Because Plaintiff filed his claim on February 4, 2020, the ALJ was required to follow the revised guidelines in conducting Plaintiff's RFC assessment. 20 C.F.R. § 404.1520c(a); *Winston*, 755 F. App'x at 402, n. 4.

20 C.F.R. § 404.1520c(b).[7] Under these guidelines, the ALJ must articulate how persuasive he finds each of the opinions in the record. 20 C.F.R. § 404.1520c(b).[8]

As an administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, including the credibility of medical experts and the weight to be accorded their opinions. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). However, the "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984). The ALJ must address and make specific findings regarding the supporting and conflicting evidence, the weight to give that evidence, and reasons for his or her conclusions regarding the evidence. *Armstrong v. Sullivan*, 814 F. Supp. 1364, 1373 (W.D. Tex. 1993).

### B. Failure To Address Psychiatrist's First Letter Was Not Error.

The record contains two letters from Dr. Nemirovskiy, Plaintiff's treating

---

[7] These factors include supportability, consistency, the physician's relationships with Plaintiff, the physician's specialization, evidence showing the medical source is familiar with the other evidence in the claim, or that the medical source understands the disability program's policies and evidentiary policies. *Id.*

[8] The revised guidelines have eliminated the former requirement that the ALJ give deference to the opinions of treating physicians. *Garcia v. Saul*, No. SA-19-CV-01307-ESC, 2020 WL 7417380, at *4 (W.D. Tex. Dec. 18, 2020) (explaining that despite the revised regulations, previous decisions are still relevant as supportability and consistency have always been the most important considerations.).

psychiatrist, dated March 26, 2021. R. 86[9] & 87.[10] Plaintiff argues that the ALJ erred

in rejecting these letters without explanation. ECF No. 12-1 at 11-12. Defendant

responds that Dr. Nemirovskiy's letters were properly excluded because they were

conclusory and inconsistent with other mental examinations included in the record.[11]

ECF No. 13 at 7-8.

Plaintiff is correct that the ALJ did not discuss Dr. Nemirovskiy's letters in

---

[9]  The first letter states the following:

> This letter is in reference to Mr. Thomas Hribar and his disability claim. I am a VA psychiatrist and Mr. Hribar is currently under my care for treatment of Major Depressive Disorder (MDD) and Generalized Anxiety Disorder (GAD). He has been diagnosed and treated for MDD and GAD by multiple other MH providers at the Conroe VA since 2017. These mental health conditions are chronic and not curable. In October 2018, he required psychiatric hospitalization for stabilization of his mental health condition. He currently requires psychiatric treatment including both psychotherapy and medication management to alleviate his symptoms. Despite receiving treatment, he continues to experience persistent and significant mood and anxiety symptoms.

> As his psychiatrist, it is of my opinion that Mr. Hribar is not capable of working any type of job due to his MH disability. He also suffers from severe chronic low back pain and is receiving treatment for this as well. Due to his physical condition and pain, his mood and anxiety symptoms have worsened.

[10] The second letter states the following:

> The US Veteran, Mr. Thomas Hribar, is my patient and has been under my care at the VA. I am familiar with his history and functional limitations imposed by his disability. He meets the definition of disability under the Americans with Disabilities Act, the Fair Housing Act, and the Rehabilitation act of 1973.

> Due to his medical condition, Mr. Hribar has certain limitations coping with stress/anxiety and social interaction. In order to help alleviate these difficulties, and to enhance his ability to live independently, I am prescribing a service animal that will assist Mr. Hribar in coping with his disability.

[11] Defendant also defends the ALJ's rejection of a blank form that appears to have been sent to Dr. Nemirovskiy, but not filled out. R. 936.  Because Plaintiff does not argue that the ALJ erred in rejecting the blank form, any error is waived. *Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 722 (E.D. Tex. 2019) ("A party waives an issue if he fails to adequately brief it.") (quotations omitted).

his decision. However, the ALJ is under no obligation to discuss every piece of evidence that he reviewed and considered in his written opinion. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (finding that the ALJ is not required "to do an exhaustive point-by-point discussion" to justify his findings); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) ("We do not require the ALJ to discuss every piece of evidence, but only to articulate his rationale sufficiently to allow meaningful review."). Further, "[t]he ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it." *Hammond v. Barnhart*, 124 Fed. Appx. 847, 851 (5th Cir. 2005). Here, the ALJ acknowledged that he reviewed all the evidence. R. 23.

In fact, the only evidence ALJs must consider and weigh when making their decisions are medical opinions. *See Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2). Because Dr. Nemirovskiy's first letter was not a medical opinion, the ALJ did not commit error in rejecting it without explanation. *See Carter v. Berryhill*, No. W-16-CA-00282-JCM, 2017 WL 2859745, at *5 (W.D. Tex. July 5, 2017) (finding that because statement from physician was "not a medical opinion and thus the ALJ had no duty to discuss it nor explicitly weigh it."). The second letter will be addressed in

the next section discussing the ALJ's failure to consider Plaintiff's need for a service animal.

The first letter from Dr. Nemirovskiy contained Plaintiff's diagnosed mental health conditions and stated that, "[a]s his psychiatrist, it is of my opinion that [Plaintiff] is not capable of working any type of job due to his MH disability." R. 86. "[A] determination by a treating physician that an applicant is 'disabled' or 'unable to work' is not a medical opinion entitled to deference, but rather a legal conclusion 'reserved to the Commissioner.'" *Tucker v. Astrue*, 337 Fed. Appx. 392, 396–97 (5th Cir. 2009) (citing *Frank*, 326 F.3d 618, 620 (5th Cir. 2003)). By regulation, opinions on an applicant's ability to work are not "medical opinions," for purposes of § 404.1527 and "are not entitled to any special significance or treatment under the regulations." *Tucker*, 337 F. App'x at 396–97. Consequently, an ALJ is not required to discuss such an opinion. *Orange v. Colvin*, No. CV 15-246-JJB-RLB, 2016 WL 4034798, at *4 (M.D. La. June 14, 2016), *report and recommendation adopted*, No. CV 15-246-JJB-RLB, 2016 WL 4035330 (M.D. La. July 25, 2016) (finding that the "ALJ was not required to discuss Dr. Broussard's opinion as to the ultimate issue of disability — a decision reserved for the Commissioner"); *Beard v. Commissioner of Social Security*, No. 8:17-CV-2940-T-PDB, 2019 WL 1417466, at *3 (M.D. Fla. Mar. 29, 2019) (finding that the ALJ did not need to weigh physician's statement because "statement on a matter reserved to the Commissioner and therefore was not

a medical opinion"). Therefore, because Dr. Nemirovskiy's letter consisted of an opinion on an issue ultimately reserved for the ALJ, the ALJ was not required to address it.

### C. The ALJ Erred Because He Failed To Consider Plaintiff's Need For A Service Animal.

Plaintiff also complains that the ALJ erred in not considering the medical necessity and vocational impact of his service animal. ECF No. 12-1 at 10-11. Defendant responds that the ALJ did not err because there was no prescription for a service animal in the record. ECF No. 13 at 8. The Court agrees with Plaintiff and remands his case for the ALJ to determine Plaintiff's need for a service animal.

"'[T]he use of a service dog must be medically necessary to be considered in an RFC assessment.'" *Duenes v. Kijakazi*, 578 F. Supp. 3d 859, 869 (S.D. Tex. 2022).[12] In *Duenes*, the court ordered remand because despite testimony regarding the service animal and a prescription for the service animal in the record, "the ALJ

---

[12] (quoting *McGehee v. Berryhill*, 386 F.Supp. 3d 80, 87 (D. Mass. July 2, 2019) (citing *Santos v. Colvin*, No. 3:12-cv-5827-KLS, 2013 WL 5176846, at *2, *6 (W.D. Wash. Sept. 12, 2013) (finding a reversible error where the ALJ did not consider the vocational impact of plaintiff's use of a service animal when "at least some evidence in the record" showed that "plaintiff's use of a service animal when "at least some evidence in the record" showed that "plaintiff's use of a service dog [was] medically necessary"); *Rentfro v. Colvin*, No. 14-cv-3015, 2015 WL 12868081, *13 (C.D. Ill. Oct. 21, 2015) (finding that the ALJ's failure to adequately address evidence of plaintiff's prescription from doctor for service dog [was] material and noting that it was unclear "that a person could perform a cleaning job if her RFC required her to take a service dog with her to the job site."); [*but see*] *Payano v. Colvin*, No. 2:15-cv-294-RFB-GWF, 2017 WL 4778593, at *4 (D. Nev. Oct. 23, 2017) (finding a letter from a psychiatrist recommending a service dog alone does not support an assessment that a dog is necessary for plaintiff to work and therefore it was a harmless error for the ALJ to omit the need for a service dog in the hypothetical question to the VE where the evidence failed to support that a service dog was necessary for plaintiff to work.)).

made no determination about whether [a service animal] was medically necessary." 578 F. Supp. 3d 869.

Defendant argues that *Duenes* is distinguishable because there is no "actual prescription" in the record and no "mention of an emotional support animal in any medical treatment record." ECF No. 13 at 8. However, courts have reversed in circumstances where "at least some evidence in the record" showed that "plaintiff's use of a service dog [was] medically necessary." *Santos*, 2013 WL 5176846, at *2, *6 (finding a reversible error where the ALJ did not consider the vocational impact of plaintiff's use of a service animal).

Here, there is ample evidence from which the ALJ could have concluded that Plaintiff's service dogs were medically necessary. First, Dr. Nemirovskiy's letter states that she "is prescribing" a service animal to assist Plaintiff in coping with stress, anxiety, and social interactions arising from his disability. R. 87. While this letter is not written on a prescription pad, Defendant has failed to point to evidence that it is not in fact a prescription. Second, Plaintiff testified that he had a prescription that allowed him to take the service dogs with him wherever he went. *Id*. He also testified that his dogs are trained therapy dogs, and that, as part of their training, they keep him away from people when he is in public. R. 58-59. There is no evidence to the contrary. *Duenes*, 578 F. Supp. 3d at 870.

Based on this evidence, the ALJ should have considered whether the service

dogs were medically necessary to be considered in the RFC analysis. The case must be remanded for further development of the record regarding Plaintiff's need for his service animals. *See Santos*, 2013 WL 5176846, at *6 (holding that an ALJ committed reversible error in failing to discuss a plaintiff's alleged need for a service dog, where there was "at least some evidence in the record that plaintiff's use of a service dog is medically necessary"); *Kourtney L. v. Berryhill*, 2019 WL 3945251, at *3 (D. Or. Aug. 21, 2019) ("On remand, the ALJ should perform the sequential analysis and resolve conflicts in the medical record to determine whether plaintiff requires a service animal[.]").

### D. The ALJ Properly Assessed The Consistency Of Dr. Fox's Opinion.

The consistency factor is "'an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.'" *Shugart v. Kijakazi*, No. 3:21-CV-00007, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (quoting *Vellone ex rel Vellone v. Saul*, No. 1:20-CV-00261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, No. 20-CV-261 (RA), 2021 WL 2801138 (S.D.N.Y. July 6, 2021)). As such, consistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals. *See Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-00588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022) (comparing a doctor's opinion to that of two state agency medical

consultants).

Plaintiff complains that the ALJ erred in two ways when evaluating Dr. Fox's opinion. First, Plaintiff argues that it was error for the ALJ to find that the consistency factor weighed against finding Dr. Fox's opinion persuasive because the ALJ did not include consideration of other medical opinions. ECF No. 12-1 at 13. Second, Plaintiff contends that the ALJ's consistency analysis impermissibly addressed only a portion of Dr. Fox's opinion. *Id.* at 13-14. Both contentions are meritless.

The ALJ found that Dr. Fox's opinion was not consistent with Plaintiff's daily activities. Specifically, Dr. Fox opined that Plaintiff "was limited in his ability to sustain concentration and persist in work-related activity at a reasonable pace," which the ALJ found inconsistent with Plaintiff's ability to do "auto mechanic work (an activity that requires considerable gross movement with one's hands), regularly play the guitar (and activity that requires considerable fine manipulation), and play video games and manage his finances, all of which require considerable concentration." R. 34.

Relying on *Giles R. v. Kijakazi*, No. 4:20-CV-1220, 2021 WL 4502842, at *8 (S.D. Tex. Sept. 30, 2021), Plaintiff argues that the ALJ erred in relying on Plaintiff's daily activities for his evaluation of the consistency factor and should have relied on other medical opinions. However, *Giles* does not support this contention. In *Giles*,

the court found that that the ALJ erred when "she rejected all opinions of record limiting Plaintiff to light or sedentary work and concluded that Plaintiff could perform medium work" based on his daily activities. 2021 WL 4502842, at *8. Nothing in *Giles* requires ALJs to compare medical opinions as part of their consistency analysis, nor is the Court aware of any case that commands such a result. Plaintiff's argument is simply a disagreement with the ALJ's consideration of the consistency of Dr. Fox's opinion with the evidence in the record and a request for this Court to reweigh the evidence. This request is improper. The Court may not reweigh the evidence in the record, even if the evidence weighs heavily against the Commissioner's decision. *Brown*, 192 F.3d at 496.

Plaintiff also argues that the ALJ committed error because he failed to analyze Dr. Fox's opinion that Plaintiff was unable to regulate emotions and manage the pressures of a work environment in light of consistency with the record. ECF No. 12- 1 at 13. Plaintiff points to no caselaw supporting this position. To the contrary, courts addressing the issue have found that "[a]ccording to prevailing jurisprudence, an ALJ need not explain her evaluation of each portion of a medical source's opinion." *Hague v. Comm'r of Soc. Sec.*, No. 20-13084, 2022 WL 965027, at *6 (E.D. Mich. Mar. 30, 2022); *see also Vilches v. Kijakazi*, No. 3:21-CV-15-KFP, 2022 WL 11455775, at *4 (M.D. Ala. Oct. 19, 2022) ("A detailed description of every part of a medical source opinion's supportability and consistency (or lack

thereof) is not required"). As such, the ALJ did not err when he did not separately address the consistency of each part of Dr. Fox's opinion.

Thus, Plaintiff has failed to show the ALJ erred in his consistency analysis of Dr. Fox's opinion.

### E. The ALJ Did Not Improperly Rely On His Own Lay Opinion.

Plaintiff argues that because the ALJ found the opinions of each psychiatric professional unpersuasive, he improperly relied on his own unsupported opinion. ECF No. 12-1 at 14. Plaintiff's argument is without merit.

Just because the ALJ did not accept all medical opinions at face value does not mean that he substituted his own lay opinion. As a preliminary matter, ALJ's are not required to create an RFC that corresponds exactly with the medical opinions of record. *See Cooley v. Comm'r of Soc. Sec.*, No. 20-CV-46, 2021 WL 4221620, at *5 (S.D. Miss. Sept. 15, 2021) (noting "the ALJ's RFC determination neither needs to perfectly match a particular medical opinion nor find the sole supporting medical opinion entirely persuasive," because otherwise the RFC "would be largely limited to rubberstamping a particular medical opinion") (quotations and citations omitted); *Myers v. Kijakazi*, No. 20-CV-445, 2021 WL 3012838, at *4 (W.D. Tex. July 16, 2021), *report and recommendation adopted*, 2021 WL 4025993 (Sept. 3, 2021) (explaining that the law does not require a positive statement or positive evidence from a medical source indicating a claimant can perform the demands included in

the RFC).

Further, "[t]he regulations do not prohibit the ALJ from assessing the claimant's RFC based on other record evidence when he finds all medical opinions to be unpersuasive." *West v. Kijakazi*, No. CV H-21-2395, 2022 WL 4137297, at *6 (S.D. Tex. Aug. 26, 2022), *report and recommendation adopted*, No. CV H-21-2395, 2022 WL 4138574 (Sept. 12, 2022). Here, the ALJ used medical records, the SAMCs opinions, treatment notes, and Plaintiff's testimony to formulate the RFC. This is not lay interpretation of the evidence. *See, e.g., Carson v. Comm'r of Soc. Sec.*, No. 21-CV-12, 2022 WL 2525438, at *7 (E.D. Tex. May 25, 2022), *report and recommendation adopted*, 2022 WL 2489340 (July 6, 2022) (holding the ALJ did not err in finding state agency opinions not persuasive and in formulating the RFC based on testimony, medication management, activities of daily living, and other medical evidence because there is no requirement that the RFC mirror or match a medical opinion).

"What [plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine [plaintiff's] capacity for work." *Taylor*, 706 F.3d at 602–03. The ALJ found the SAMCs opinions on physical limitations persuasive and relied on them, but found even more restrictions, which is in Plaintiff's favor. R. 33. Even if the ALJ should have afforded more weight to the medical opinions in the record, such error would be harmless.

*See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (noting "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party have been affected"); *see also Frank*, 326 F.3d at 621–22 (applying harmless error analysis where the ALJ "seem[ed] to draw his own medical conclusions from some of the [medical] data, without relying on a medical expert's help").

The only issue Plaintiff raises with the ALJ's reasoning is that he failed to explain how the daily activities supported a finding that "Plaintiff has the ability to sufficiently regulate his emotions to interact appropriately with coworkers and the public, respond appropriately to criticism from one or two supervisors, adapt to occasional change in the work setting, or otherwise cope with the pressures of a work setting." ECF No. 12-1 at 15. But the ALJ did provide such an explanation. Specifically, the ALJ stated that with regard to certain activities the Plaintiff engaged in—preparing meals, performing most household chores, driving, riding a motorcycle, shopping in stores and online, handling money, playing the guitar, doing self-paced auto projects, doing laundry, performing light repairs, cleaning, playing video games, riding his bicycle, caring for himself, and caring for two 100 pound plus dogs—the "social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." R. 35.

Finally, the ALJ incorporated Plaintiff's difficulties with stress and social interactions into the RFC, including that Plaintiff "should never be required to work at a forced pace," should be "limited to no more than only occasional interactions with the public, coworkers and supervisors, and should have no more than one or two supervisors," and "should never be subjected to more than only occasional changes in the work setting and should never be required to make plans or set goals independently of others." R. 28. These limitations were also consistent with the SAMCs' opinions. Both Dr. Kwun and Dr. Ligon found that Plaintiff was moderately limited in his "ability to accept instructions and respond appropriately to criticism from supervisors" and his "ability to get along with coworkers." R. 103, 120. Furthermore, both SAMCs found that Plaintiff was not significantly limited in his ability to interact appropriately with the public. *Id*.

Therefore, the ALJ did not improperly rely on his own lay opinion in formulating Plaintiff's RFC.

## CONCLUSION

Accordingly, Plaintiff's motion for summary judgment, ECF No. 12, is **GRANTED in part** and **DENIED in part** as follows: Plaintiff's case is remanded for the Commissioner to consider the medical necessity of Plaintiff's service animals and whether Plaintiff's RFC should be adjusted to account for the need for service animals. In all other respects, Plaintiff's motion is **DENIED.**

The Commissioner's motion for summary judgment, ECF No. 13, is **DENIED in part** as to the ALJ's failure to consider the medical necessity of Plaintiff's service animals in his determination of the RFC. In all other respects, Defendant's motion is **GRANTED**.

**SIGNED** at Houston, Texas, on March 16, 2022.

*Dena Palermo*
_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**